**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| **v.** | : | **No. 25-cr-472** |
| | : | |
| **HERM TUGGLES** | : | |

**McHUGH, J.**                                                                                  **May 1, 2026**

**MEMORANDUM**

Defendant Herm Tuggles stands charged with unlawful possession of a firearm.  The case came to the attention of law enforcement from recordings of phone calls while Mr. Tuggles was in state custody, during which he can be clearly heard instructing his then-girlfriend to make a straw purchase of a firearm. Indeed, one of the conversations occurred while she was in a gun shop, and her discussions with the dealer can be clearly heard on the recording. Tuggles moves to suppress the recordings on the ground that his conversations were covertly and unlawfully intercepted by law enforcement.

The motion is palpably lacking in merit. The law is well-settled in the Third Circuit that neither a prisoner, nor the recipient of the phone call from the prisoner, have a reasonable expectation of privacy in phone calls that are made from a prison facility. "And the prison's phone policies and warnings to inmates make any subjective expectation of privacy even more unreasonable." *United States v. Jarmon*, 14 F. 4th 268, 272 (3d. Cir. 2021). "That principle applies to both parties on the line." *Id.* (citing *United States v. Shavers*, 693 F.3d 363, 390, n.7 (3d. Cir 2012).

The record reflects that Tuggles acknowledged in writing that except for consultations with his attorney, his calls would be recorded.  ECF 33-7. The Court has reviewed both the transcripts

of the calls and the recordings themselves.  Appropriate warnings that the calls were being recorded were given throughout, and Mr. Tuggles can even be heard berating his girlfriend for her lack of discretion on a recorded line. The Government has also produced a series of photographs from the phone terminals at the state institution where Tuggles was in custody, documenting the clear display of signs notifying prisoners that "All inmate telephone conversations may be intercepted, recorded, monitored, or divulged by department of corrections personnel."  ECF 33-8.

The defense makes brief mention of *Rhode Island v. Innis*, 446 U.S. 291 (1980), suggesting that the Fifth Amendment might be violated by the recording of prisoner calls, but nothing in that case is relevant here.

Defendant also seeks to suppress statements made during the searches that later ensued, but this is puzzling as he invoked his right to remain silent. ECF 33-9. The portion of the motion seeking to suppress digital evidence is likewise moot, as officers were unable to harvest anything from the phones they were authorized to search.

The motion raises two further issues, both of which are more appropriately addressed at trial.  Without attacking the search warrant, the defense argues that because Mr. Tuggles shared his residence, the Government cannot prove the weapon in question was his or under his control. This is a matter for proof at trial. Defendant also challenges the qualifications and ability of law enforcement to interpret slang expressions used during the recordings. By way of preliminary observation, it is unclear how much "translation" is necessary when the word "Glock" can be heard clearly on the tape as Tuggles' girlfriend was discussing her purchase with the store clerk. Regardless, the proper scope of testimony should be reserved for trial.

A hearing is not only unnecessary—it  would be a waste of public resources.  An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge